John Earnest LUCAS, Appellant,

v.

The STATE of Texas, Appellee.

No. 35820.

Court of Criminal Appeals of Texas.

June 5, 1963.

Rehearing Denied June 29, 1963.

Grady Hight, of Love & Hight, Fort Worth, for appellant.

Doug Crouch, Dist. Atty., Albert F. Fick, Jr., Asst. Dist. Atty., Fort Worth, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The offense is robbery, with a prior conviction for an offense of like character alleged for enhancement; the punishment, life imprisonment.

The state's proof shows that on the day in question three men wearing plastic Hallowe'en-type masks—two of whom were armed with pistols—entered a Safeway Store at 3601 Avenue E in the city of Fort Worth, around 8:20 o'clock, p. m., and after forcing D. H. Zettler, the store manager, to place a large sum of money in a bag, fled from the building with the money. The total amount of money taken was $2,207, consisting of a large quantity of pennies, nickels, dimes, and quarters, and bills in denominations up to $20. Two lay-away purchase slips were also placed in the bag by the manager, which bag was taken away by the bandits.

Around 9 o'clock, p. m., Detective E. R. Stewart and other officers went to an apartment house some two or three miles from the scene of the robbery. One of the officers had a police dog with him. The building consisted of four apartments, one being numbered 740 Woodrow Street. While the officers were inspecting a Studebaker automobile, parked near the building, which appellant had been seen to drive, one James Parrott came to the corner of the building and then fled. Some of the officers gave chase but were unable to capture him. During the chase, Parrott fell to the ground, and when Sgt. Cox arrived at the spot he (Cox) gathered up $190.80 in coins which were strewn about the street.

While Officer Stewart and his partner were trying to arouse the occupants of the apartment designated as 740 Woodrow Street, one Bobby Lott came to the door and out of the apartment, where he was taken into custody.

Shortly thereafter, the appellant and two women came out of the apartment and were taken into custody. Appellant was handcuffed, searched, and the sum of $625 taken from his person.

The officers then asked appellant if there was anyone else in the apartment, to which he replied, "No," and when the officers told him to be sure because they did not want to put the police dog in on anyone, appellant stated, "Go look for yourself." Thereupon, Detective Stewart and Sgt. Cox went inside the apartment and when Sgt. Cox went upstairs he found a large amount of money lying in full view on the floor and in a drawer on top of a dresser. Thirty-eight one dollar bills were found on the floor and two hundred one dollar bills in the drawer. A lay-away ticket was also found on the floor, which was identified by the store manager as one of the tickets which he placed in the bag at the time of the robbery.

The apartment was then locked and appellant was taken to jail by the officers. Later in the night appellant was told by the officers that they wanted to return to the apartment to see if they had overlooked anything. Appellant stated that he wanted to go with them so that he could change his shoes and get some cigarettes. Around midnight he returned to the apartment with the officers, where he opened the door with his key and admitted them inside.

Searching the apartment on this occasion, the officers found in a space in the wall a second lay-away ticket also identified by the store manager as coming from the store, a brown bag, some cotton gloves, a brown cap without a bill, a plastic mask, a .45 caliber pistol, and $293 in money.

The following day while appellant was in custody, Rev. Everett E. Morris, the landlord and owner of the apartment, admitted himself to the apartment to unstop a sewer line and found lodged in a trap beneath the commode some plastic material consisting of two Hallowe'en-type masks, which he turned over to the police.

Proof was made of the appellant's prior alleged conviction.

Appellant did not testify but called one witness, who testified, outside the presence and hearing of the jury, in support of his contention that he was the lessor of the apartment in question.

The issue of appellant's guilt was submitted to the jury upon a charge on the law of principals and circumstantial evidence.

■ We find the evidence sufficient to sustain the conviction.

Appellant's primary contention on appeal is that the searches of the apartment by the arresting officers without a search warrant were unlawful and the fruits thereof were improperly admitted in evidence.

Under the record as made in the trial court, we find no error in the court's action in admitting before the jury the evidence showing the searches of the apartment and the fruits thereof.

An issue was made as to appellant's possession and control of the apartment, and evidence was submitted to the court on such issue outside of the presence and hearing of the jury. No effort was made by appellant to present such issue to the jury for their determination.

Rev. Morris, the aforesaid owner of the building, upon being called as a witness by the state, testified that he rented the apartment—some three weeks before the appellant's arrest—to a man by the name of Earl Adams and that he did not see or recognize the man in the courtroom. He further stated that after he rented the apartment to Adams he collected the rent from a woman who lived in the apartment and that he did not know anyone by the name of John Lucas.

Leonard Dale Collins, called as a witness by the appellant, testified that in the month before the offense was committed he had taken appellant to introduce him to Rev. Morris, for the purpose of renting the apartment; that he had visited appellant once shortly thereafter at the apartment; but that he did not know whether he was still occupying or living there at the time of his arrest.

The trial court was warranted, under the testimony, in concluding that appellant did not occupy and control the apartment at the time it was searched.

If, as contended by appellant, he was in control of the premises as a tenant, the evidence shows that warrants for the arrest of the appellant for various felonies were outstanding and the first entry into the apartment by the officers was, with his authority, to look for other people. A valid arrest authorizes the search of the place where the arrest occurs. Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668. The officers, having appellant's permission to enter the apartment, were not trespassers and their removal of the articles found therein, which tended to connect him with the robbery, was not unlawful. Traylor v. State, 111 Tex.Cr.R. 58, 11 S.W.2d 318; Turner v. State, 119 Tex. Cr.R. 323, 45 S.W.2d 205. The fact that appellant was under arrest when he authorized them to enter would not vitate his consent. Henderson v. State, Tex.Cr.App., 353 S.W.2d 226. We do not agree that because the officers stated they did not want to take the police dog inside if someone were in the apartment that the permission to search was shown to have been gained by coercion. Appellant knew that no one was in the apartment at that time.

As to the second entry into the apartment around midnight and search by the officers, the proof shows that before they entered the appellant returned with them, after having expressed his desire to do so, and produced a key which he used in unlocking the door, and admitted them inside. His actions show consent to the search. Munoz v. State, 155 Tex.Cr.R. 223, 233 S.W.2d 494, and Cameron v. State, Tex.Cr.App., 346 S.W.2d 845.

Appellant's objection to the admission in evidence of the two plastic masks found in the apartment by the landlord on the day after his arrest was that there was no connection between the exhibits offered and the offense for which he was on trial. Under the record, such objection was without merit. Nor do we find any merit in appellant's objection to the landlord's testimony relative to finding the masks, on the ground that no probable cause was shown for his entering the apartment. The landlord testified that the occasion for his going into the apartment was a call he received from a tenant in an adjoining apartment, "No. 738," reporting a stopped sewer line. He further testified that the sewage from the commodes in both apartments flowed into the same main line and that after he had cleared the trouble in the adjoining apartment he went into the apartment at 740 Woodrow, as was his custom, to check the line in that apartment.

Complaint is made to the court's action in permitting Officer Stewart to testify relative to flight from the scene by the man named Parrott, over appellant's objection that such was hearsay and actions by a third person outside of appellant's presence. Officer Stewart was clearly relating facts within his personal knowledge from what he observed—which was not hearsay. 24 Tex.Jur.2d, Sec. 561, pages 61–65. The actions of Parrott in fleeing from the scene was also a part of the res gestae of appellant's arrest. Lemley v. State, 135 Tex.Cr.R. 148, 117 S.W.2d 435.

Complaint is also made to the court's action in permitting Officer Harris to relate that portion of the conversation between appellant and Officer Stewart following his arrest, when appellant, after being asked if anyone was in the house, replied that there was not and stated that if the officer did not believe him he could look for himself. This testimony was admissible on the issue of whether appellant gave his consent to the officers' entry into the apartment. The fact that he was under arrest did not render such testimony inadmissible. Graves v. State, Tex.Cr.App., 336 S.W.2d 156; Sikes v. State, Tex.Cr.App., 334 S.W. 2d 440.

 Appellant's last contention is that he has been denied the right to counsel of his own choosing, because of the court's action in denying his motion, filed before trial of the cause, requesting the court to order the money which he had on his person at the time of his arrest restored to him in order that he might hire counsel to represent him.

We find no error in the court's action, as the court apparently chose to follow the provisions of Art. 934, Vernon's Ann.C.C.P., which provides:

"Upon the trial of any criminal action for theft, or for any other illegal acquisition of property which is by law a penal offense, the court trying the case shall order the property to be restored to the person appearing by the proof to be the owner of the same."

The evidence being sufficient to support the conviction and no reversible error appearing, the judgment is affirmed.

Opinion approved by the Court.