[Crim. No. 15847.    Second Dist., Div. Four.    July 1, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. LOUIS R. CASTILLO, Defendant and Appellant.

Calvin W. Torrance, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Marilyn K. Mayer, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—Defendant and a codefendant, Sally Carrillo (who is not appealing), were convicted in a nonjury trial of possession of heroin (Health & Saf. Code, § 11500). The case was submitted on the transcript of the preliminary examination, plus the additional testimony taken at the hearing on defendant's motion to suppress evidence under Penal Code, section 1538.5. Three prior felony convictions alleged against defendant were found to be true. Defendant's appeal is from the judgment.

Narcotics Officer Tusan received information from a confidential informant that a female known to him as Sally, and whom he described, was selling heroin from her house at 3752

East Woolwine Drive. The informant said that he had gone to her house several times and on each occasion had purchased heroin from her. Tusan believed the informant to be reliable since the informant had on three separate past occasions given him information which led to narcotics arrests and to the defendants involved being held for trial. (Their cases were still pending.)

Tusan checked with Sergeant Maga and with other officers of the Narcotics Division and was told that they had received substantially the same information from other sources and had made independent investigations which tended to confirm the information. Sergeant Maga told Tusan that Sally's last name was Carrillo. Tusan checked the utilities and phone for the address given by the informant and confirmed that a Sally Carrillo lived there.

At about 8 p.m. Officer Tusan and his partner staked out in the vicinity of 3752 Woolwine. They watched for about 45 minutes and observed four persons separately arrive and leave after short time intervals. There were two houses very close together and, from his vantage point, Tusan could not tell which house the persons entered. The officers then approached the two houses. They did not see a number on either house. They went to the front door of the house they believed to be number 3752. Tusan knocked on the door and identified themselves to a woman who appeared at the window inside. They told her they were on a narcotics investigation and asked if she was Sally. She replied that they had the wrong house; that Sally lived next door; that other police officers had been to Sally's house in the past on narcotics investigations.

As he was talking to the woman, Tusan observed that a man, defendant, leaned out of a window of the house the woman said was Sally's and looked in the officers' direction. The window was only about 6 feet from where the officers were standing on the front porch and defendant appeared to overhear what was being said. The officer then heard what sounded like someone running inside the house and then saw defendant rapidly pull back inside and retreat into the interior. Believing that an attempt was being made to dispose of narcotics, the officers immediately crossed over to the house and pushed open the front door which was not locked. As he entered the living room, Tusan saw defendant run into the bathroom. At the same time he saw Carrillo coming from the bedroom area. Tusan proceeded to the bathroom and found defendant flushing objects down the toilet. Defendant put a

balloon, syringe, eyedropper and burned spoon into the toilet. The officer managed to retrieve the syringe. Defendant and Sally Carrillo were then both placed under arrest.

In a search of the house which followed, the officers found quantities of white powder in the bathroom sink, on the window ledge of the west window of the bedroom defendant was looking out of and on the ground just outside the window. Defendant had been leaning out of the north window. There was also more powder on the floor of the bedroom. The powder, which was subsequently tested and found to be heroin, was introduced against defendant.

Defendant's contention that the officers lacked probable cause for arrest when they entered Sally's house, is without merit. ■ "[A]n arrest and search may be made solely on the basis of information received from a single reliable informant." (*People* v. *Melchor*, 237 Cal.App.2d 685, 689 [47 Cal.Rptr. 235].) Officer Tusan testified that his informant had on three separate past occasions given him information which led to narcotics arrests. Additional circumstances tended to corroborate what the informer had said. ■ "Reliability of the informant . . . is not necessarily limited to the officer's past experience with the informant, but also may be substantiated by the proven accuracy of the information given by the informant. Such substantiation may be supplied by corroborative facts known or discovered by the police officer." (*People* v. *Melchor, supra,* at p. 689.) ■ Here, in addition to the reports on Sally received from his fellow officers, Tusan's own personal observations tended to confirm what he had been told by the informant. Seeing defendant at the window watching and listening when he spoke to the neighbor, and then. reacting the way he did when the officer revealed his identity and purpose to the neighbor, provided ample corroboration and support for his belief that the occupants of the house were in possession of narcotics and were attempting to dispose of it.[1]

■ Contrary to defendant's contention, disclosure of the identity of the informant was not required. The informant was neither a participant in nor eyewitness to the crime, but merely "pointed the finger of suspicion" at the codefendant and thereby caused the police investigation which revealed defendant's activities as well as those of the codefendant. No showing whatever was made that the informant would be a

---

[1]Although the issue is not raised, we note in passing that the facts support the finding that compliance with Penal Code, section 844 was excused.

material witness on the issue of defendant's guilt or innocence, or that the informant's testimony could in any manner benefit the cause of defendant. As above indicated, there is ample support for the finding as to the reliability of the informant. Under the circumstances, the trial court properly exercised its discretion in refusing to require disclosure. (See Evid. Code, § 1042, subd. (c) ; *People* v. *Sanders,* 250 Cal.App. 2d 123, 131-133 [58 Cal.Rptr. 259].)

An additional point has arisen during the pendency of this appeal which requires discussion. In *Chimel* v. *California,* 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2037] decided on June 23, 1969, a new rule was announced limiting the scope of warrantless searches which may be made incident to an arrest. ■ A search of the house in which a defendant is arrested is no longer permissible as an incident to his arrest. The search is limited to "a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." (P. 763 [23 L.Ed.2d 694].)

The search here clearly exceeded the scope of the search authorized under the new rules of *Chimel.* However, although nothing is said on the subject in *Chimel,* we believe that the court intends that the new rules should be given prospective application to searches conducted after the date of its decision, rather than retroactive application to strike down convictions based on evidence validly obtained under the rules in force at the time the officers acted.

In the recent case of *Desist* v. *United States* (1969) 394 U.S. 244 [22 L.Ed.2d 248, 89 S.Ct. 1030], the court concluded that its decision in *Katz* v. *United States* (1968) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507], (overruling the electronic eavesdropping "physical penetration" and "trespass" tests and holding that all electronic eavesdropping constituted a search and seizure of speech), was to be given wholly prospective application; that the rules of *Katz* were to be applied only to cases in which the prosecution sought to introduce the fruits of electronic eavesdropping conducted after the date of *Katz.*

The court in *Desist* stated that the determination whether constitutional rules of criminal procedure are to be retroactive in application or nonretroactive, depends on the following three factors: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards and (c) the effect on the

administration of justice of a retroactive application of the new standards." (P. 249 [22 L.Ed.2d at p. 255].) The court indicated that the foremost consideration should be given to the first factor, and pointed out that the purpose in requiring exclusion of illegally secured evidence is to deter misconduct by the police; that this purpose would not be advanced by retrospective application of rules where the police conduct had already occurred; that the exclusionary rule in search and seizure cases was merely a procedural weapon having no bearing on the defendant's guilt or the fairness of his trial.

The court in *Desist* concluded (at p. 253 [22 L.Ed.2d at p. 257]) : "Both the deterrent purpose of the exclusionary rule and the reliance of law enforcement officers focus upon the time of the search, not any subsequent point in the prosecution, as the relevant date. Exclusion of electronic eavesdropping evidence seized before *Katz* would increase the burden on the administration of justice, would overturn convictions based on fair reliance upon pre-*Katz* decisions, and would not serve to deter similar searches and seizures in the future."

The reason given by the court in the *Desist* decision for applying the *Katz* search and seizure rules only to searches following the date of *Katz*, apply with at least equal force to the question of the application to be given to the *Chimel* search and seizure rules. We have no reason to believe that the court will follow any different approach.

We therefore conclude that, since the search here in question took place prior to June 23, 1969 (when the *Chimel* decision was filed), the new rules announced in that decision are not available to defendant.

The judgment is affirmed.

Files, P. J., and Kingsley, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 15, 1969.