[Crim. No. 14827.    Second Dist., Div. Five.    July 28, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ANTONIO SALVADORE DOMINGUEZ, Defendant and Appellant.

Ronald M. Sohigian, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Andrea Sheridan Ordin, Deputy Attorney General, for Plaintiff and Respondent.

STEPHENS, Acting P. J.—By information, defendant Dominguez, along with codefendants Bell and Serna, was charged in count I with conspiracy (Pen. Code, § 182) to violate Health and Safety Code section 11912 (illegally selling, furnishing, or giving away a restricted dangerous drug) ; in count II, defendant and Bell were charged with a violation of Health and Safety Code section 11912; in count III, all defendants were charged with a violation of that section; and in count IV, defendant and Serna were charged with violation of Health and Safety Code section 11911 (unlawful possession of a restricted dangerous drug for purpose of sale).

Count I was dismissed as to each defendant pursuant to motions under section 995 of the Penal Code. Defendant's motion to dismiss under section 995 of the Penal Code was denied as to the remaining counts against him.

Defendant pleaded not guilty and waived jury trial. By stipulation, the cause was submitted on the testimony contained in the transcript of the proceedings had at the preliminary hearing held on February 17, 1967. All exhibits received at the preliminary hearing were deemed received in evidence, subject to the court's rulings and each side reserved the right to produce additional evidence. Near the end of the trial, defense counsel's objection to the introduction of the exhibits into evidence was overruled, and his motion to suppress the exhibits was denied. The court found defendant not guilty of counts II and III and guilty of count IV, possession for purpose of sale of a restricted dangerous drug.

Following the conviction, defendant was referred to the director of the Department of Corrections for review regarding placement. Thereafter, on October 9, 1967, criminal proceedings were adjourned and defendant was committed to the custody of the director of the Department of Corrections for a period of observation and diagnosis pursuant to Penal Code section 1203.03. On December 12, 1967, defendant was returned to court for sentencing. Proceedings were suspended and defendant was placed on probation for three years on the

condition, among others, that defendant spend the first 120 days in county jail.

On February 2, 1967, Deputy Melendrez was working for the Narcotics Bureau in an undercover capacity. He was introduced to codefendant Bell by an informant. Bell told Deputy Melendrez that he knew where he could purchase illegal narcotics. Melendrez, Bell, and the informant then proceeded to an address at 3311 Hunter Street in Los Angeles. Bell entered the location, came out accompanied by an elderly male caucasian subsequently identified as defendant Dominguez, and both men drove off in Bell's car. A short time later, the men returned. After Bell parked the car, he returned to Deputy Melendrez and gave him a paper sack containing numerous tablets of amphetamine sulphate. Deputy Melendrez had previously given Bell money for the purchase. Deputy Melendrez then told Bell he wanted to buy more pills the next day. Bell agreed.

On February 3, 1967, Deputy Melendrez, with county-advanced funds, met Bell. The officer gave him the amount of money needed, and Bell left to make the purchase. Shortly afterwards, Bell returned and gave the officer three paper bags containing amphetamine sulphate pills.

On the same day, pursuant to the investigation, other officers of the narcotics bureau were watching the sequence of events. After Bell left Deputy Melendrez to buy the pills, the officers followed Bell as he again went to 3311 Hunter Street to pick up defendant Dominguez. The two men then drove to 3815 Union Pacific Avenue. Defendant went into the location and returned to Bell's car a few minutes later carrying a large brown paper bag. Bell then drove defendant back to his house, and returned to Deputy Melendrez to deliver the three bags of pills.

Later the same day the officers placed the location at 3815 Union Pacific Avenue under surveillance. On two separate occasions, different men entered the house and exited shortly afterwards carrying paper bags similar to the ones delivered to Deputy Melendrez by Bell. Thereafter, at approximately 11:40 p.m., other officers arrived at the address with a search warrant. Codefendant Serna answered the door, was presented with a copy of the search warrant, and was advised of his constitutional rights. A search of Serna's wallet produced a large sum of money. Serna also voluntarily produced a number of bills from his pants pocket. A total sum of $3,250 was uncovered. The serial numbers of some of this money matched the serial numbers of the county funds used by

Deputy Melendrez when making his earlier purchases from codefendant Bell. The search also disclosed over 5,130 amphetamine sulphate pills in various parts of the house.

Upon completion of the search at 3815 Union Pacific Avenue, officers proceeded to 3311 Hunter Street to arrest defendant. At approximately 1:15 a.m. on February 4, 1967, Officer Penland knocked on the front door and it was answered by a woman later identified as Mrs. Dominguez. He told her that a narcotics investigation was in progress and asked her if her husband was present. Officer Penland then observed defendant in the front room, recognized him as the man he had seen earlier exiting Bell's vehicle, and placed him under arrest. Officer Penland informed defendant that a search of the premises was going to be made pursuant to the arrest, and asked defendant which bedroom he occupied. Defendant pointed his bedroom out and Officer Penland, accompanied by defendant and another officer, searched the bedroom. A large quantity of amphetamine sulphate was recovered from a chest of drawers.

■ Defendant contends that his arrest was not based on probable cause, and consequently the search incident to that arrest was unlawful. ■ Probable cause for an arrest without a warrant exists if the facts and circumstances known to the arresting officer would warrant a man of ordinary care and prudence to believe that an offense has been committed, and that the accused is guilty thereof. (*People* v. *Schader,* 62 Cal. 2d 716 [44 Cal.Rptr. 193, 401 P.2d 665]; *People* v. *Stewart,* 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97]; *People* v. *Esters,* 220 Cal.App.2d 917 [34 Cal.Rptr. 264].) ■ Of course, each case must be decided on its own facts based on the situation presented or apparent to officers at the time they were required to act. (*People* v. *Schellin,* 227 Cal.App.2d 245 [38 Cal.Rptr. 593]; *People* v. *Ruhman,* 224 Cal.App.2d 284 [36 Cal.Rptr. 493].) ■ Here, the facts known to the officers based on their surveillance of defendant's house and observance of his activities clearly established probable cause for defendant's arrest. An informant had introduced Deputy Melendrez to codefendant Bell. Bell informed the officer that he knew where to purchase illegal narcotics. On two occasions, Bell went to defendant's house and was thereafter accompanied by defendant to codefendant Serna's house. On both occasions, defendant alone entered Serna's house. Subsequently, after returning defendant to his residence, Bell completed an unlawful sale of narcotics to Deputy Melendrez.

Pursuant to a valid search warrant, Serna's residence was searched and a large quantity of narcotics was uncovered. Such data acquired through observation of defendant's activities was sufficient to connect defendant with unlawful narcotic activity. (See *People* v. *Montano*, 184 Cal.App.2d 199 [7 Cal.Rptr. 307].) While such circumstances and conduct might not excite the suspicion of an ordinary observer, it would be highly significant to officers with extensive training and experience in detecting narcotic offenders. (*People* v. *Symons*, 201 Cal.App.2d 825 [20 Cal.Rptr. 400].) Seemingly innocent acts may become significant in light of other knowledge possessed by officers. (*People* v. *Chrisman*, 256 Cal.App. 2d 425 [64 Cal.Rptr. 733].) We conclude that defendant's arrest was based on probable cause.

By supplemental letter brief, defendant has directed our attention to *Chimel* v. *California*, 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034], decided by the United States Supreme Court on June 23, 1969. In *Chimel*, a new rule was announced limiting the scope of warrantless searches which may be made incident to a lawful arrest. The search here clearly exceeded the scope authorized under the new rules of *Chimel*. However, in light of *People* v. *Castillo*, 274 Cal.App.2d 508 [80 Cal.Rptr. 211], holding that the new rules announced in *Chimel* apply only to searches conducted after the date of its decision, we are constrained to hold that such rules are not available to defendant.

The judgment is affirmed.

Reppy, J., and Chantry, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 24, 1969. Peters, J., was of the opinion that the petition should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.