**Winfield H. LYON, Jr., Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 26190.**

United States Court of Appeals Fifth Circuit.

Sept. 4, 1969.

Certiorari Denied Jan. 12, 1970. See 90 S.Ct. 597.

Winfield H. Lyon, Jr. pro se, Robert C. Josefsberq, Miami, Fla. (court-appointed) for appellant.

William A. Meadows, Jr., U. S. Atty., Theodore Klein, Asst. U. S. Atty., Miami, Fla., for appellee.

Before WISDOM and MORGAN, Circuit Judges, and DAVIS,* Judge of the United States Court of Claims.

WISDOM, Circuit Judge:

The United States indicted Winfield Lyon for knowingly possessing and transporting stolen securities in violation of 18 U.S.C. § 2314. A jury found him guilty and he was sentenced to eighteen months imprisonment.

On April 27, 1966, armed robbers stole United States Treasury bonds (the subject of the indictment), cash amounting to over $40,000, certain turnpike bonds amounting to $25,000, a safe containing the bonds and the cash, and a wallet containing several coupons from the turnpike bonds. The treasury bonds were negotiated through a Swiss bank by arrangement with a New York representative of the bank. In June 1966 Lyon

---

* Sitting by Designation.

informed the representative that the bonds belonged to one Fouad Ayoub, who was living in Yemen, and exhibited several letters purportedly from the owner. Lyon instructed the Swiss bank to deliver the proceeds from the sale of the bonds to the bearer of the matching half of a franc note enclosed with the bonds. After a routine check with the United States Treasury, the bank learned that the bonds had been stolen and deposited the proceeds in an escrow account.

Lyon admitted his possession and transportation of the securities and he did not contest the fact that they were stolen. He denied having had guilty knowledge of the theft of bonds while they were in his possession. On appeal he contends that the Government improperly introduced into evidence certain documents seized without a search warrant. Agents of the Federal Bureau of Investigation had arrested Lyon while he was standing in the front hallway of his home. In a search of the residence the agents found several incriminating documents, introduced at the trial, in the drawer of a desk in the rear hallway alcove just off the kitchen. The United States, relying primarily on United States v. Rabinowitz, 1960, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, contends that the documents were validly seized during a search incident to a lawful arrest.

The recent Supreme Court decision in Chimel v. California, 1969, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, condemns such a search as unreasonable. The search in this case, however, occurred before the Court rendered its decision in *Chimel*. We must decide, therefore, whether *Chimel* applies retroactively.[1]

In Stovall v. Denno, 1967, 388 U.S. 293, 87 S.Ct.1967, 18 L.Ed.2d 1199, the Supreme Court listed the criteria governing the retroactivity of a new constitutional standard in criminal law.

The criteria guiding resolution of the question implicates (a) the purpose to be served by the new standards, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of a retroactive application of the new standards." 388 U.S. at 297, 87 S.Ct. at 1970.

"Foremost among these factors is the purpose to be served by the new constitutional rule. Desist v. United States, 1969, 394 U.S. 244, 89 S.Ct. 1048, 22 L.Ed.2d 248, 255. *Chimel* seeks to deter illegal police action, specifically overbroad, exploratory searches of an area not within an arrestee's immediate control—without a search warrant. This purpose makes *Chimel* a companion case to Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 and Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. *Mapp* and *Katz* are not given retroactive effect. For example, see Linkletter v. Walker, 1965, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 and Desist v. United States. In *Linkletter* the Court denied habeas corpus relief to a petitioner convicted on evidence illegally seized before *Mapp*. Similarly, in *Desist* the Court held that eavesdropping by an electronic device ("seizure of a conversation") before *Katz* did not entitle the prisoner to relief. The language of *Linkletter*, quoted in *Desist*, is applicable here:

all of the cases * * * requiring the exclusion of illegal evidence have been based on the necessity for an effective deterrent to illegal police action. * * * We cannot say that this purpose would be advanced by making the rule retrospective. The misconduct of the police * * * has already occurred and will not be corrected by releasing the prisoners involved." 381 U.S. at 637, 85 S.Ct. at 1742, 14 L.Ed.2d at 613.

▮ The other criteria cited in *Stovall*, reliance by police officers on the old rule and the administrative burden

1. The Supreme Court has expressly left open the question of *Chimel's* retroactivity. Shipley v. California, 1969, 395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed.2d 732. See also Von Cleef v. New Jersey, 1969, 395 U.S. 814, 89 S.Ct. 2651, 23 L.Ed.2d 728.

that would result if the new rule is applied retroactively, also cut in favor of denying retroactivity to *Chimel*. For years police officers have relied on United States v. Rabinowitz by seizing evidence at the scene of an arrest which, had they known of the *Chimel* requirement, they could have obtained by warrant. We conclude that *Chimel* is not retroactive even as to cases still in the process of direct review. We turn, therefore, to the prior law to determine whether the search was reasonable.

■ Under the law before *Chimel* the validity of a search incident to a valid arrest depended on the reasonableness of the search in the totality of the circumstances. See United States v. Rabinowitz and Harris v. United States, 1947, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399. Here, it was reasonable to search for the instrumentalities of the crime and for the fruits of the crime other than the Treasury bonds: the missing cash, turnpike bonds, safe, and wallet. This case is similar to *Harris*, involving the search of a four-room apartment and the seizure of an envelope containing altered selective service documents. The Court said "the area which reasonably may be subjected to search is not to be determined by the fortuitous circumstance that the arrest took place in the living room as contrasted to some other room of the apartment". 331 U.S. at 152, 67 S.Ct. at 1102.

Here, again as in *Harris*, the very nature of the fruits and instrumentalities of the crime makes it likely that "they would have been kept in some secluded spot". 331 U.S. at 152, 67 S.Ct. at 1102. Lyon's reliance on Amador-Gonzalez v. United States, 5 Cir. 1968, 391 F.2d 308 is misplaced. *Amador-Gonzalez* involved a traffic arrest; there are no fruits and instrumentalities of a traffic offense.

We hold that the search in this case was reasonable and that the district court did not err in allowing the Government to admit evidence uncovered in the search.

The judgment is affirmed.