Caris Ton **THORNTON**, Appellant,

v.

**The STATE of Texas, Appellee.**

No. 42353.

Court of Criminal Appeals of Texas.

Feb. 11, 1970.

Rehearing Denied March 25, 1970.

Norman Kinne, Dallas, (by court appointment), for appellant.

Henry Wade, Dist. Atty., Alvin Walvoord, and John Tolle, Asst. Dist. Attys., Dallas, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

The conviction is for robbery by assault; the punishment eighty-five years. Appellant was tried jointly with Walter Thomas, Jr., our Cause No. 41,962, 451 S.W.2d 907 and Elroy Lampkin, No. 42,342, 451 S.W. 2d 911.

The record reflects that Thomas Johnson and Gerald Lamb had been drinking at nightspots on a Saturday night, and rather than go into Johnson's apartment, where his mother lived, they went to sleep in Johnson's car at the apartment. At approximately three or three-thirty o'clock on Sunday morning, Johnson was awakened when Walter Thomas, Jr., tapped him on the head with a pistol. Johnson got out of the car and saw two other armed men (Lampkin and Thornton); the three men took Johnson's billfold and Lamb's watch. Johnson and Lamb were ordered to get into the trunk of Johnson's car. When Johnson hesitated, Lampkin cursed him and punched him in the back with a gun. The order was then complied with, the complainants got inside the trunk, and it was closed.

The three armed men got into the car, and more than ten hours of captivity for the occupants of the trunk began. When it became daylight and during one of the many stops, Johnson looked out of a hole where a lens of a taillight had been broken and saw a pickup truck behind the car. The three men got out of the car and talked to the driver of the pickup truck. The truck followed and stopped every time the car stopped. Johnson was able to get the license number of the truck and observe some of the activities of the three men during the day. The car stopped at several business establishments in the Dallas and Oak Cliff areas. At most of the stops, two of the men would get out of the car and one would remain inside. On one occasion Johnson saw Lampkin, Thomas, Thornton and Durden (the driver of the truck) return to the car with brown paper sacks in their hands. After they jumped into the car, complainants heard change hit the floor.

At about one-thirty o'clock that afternoon, the three abandoned the car, after stripping its gears, and departed in the truck. Complainants opened the trunk with a tire tool and called the officers.

In the first ground of error, it is contended that the trial court erred in refusing to grant appellant's motion for severance, because each of his co-defendants had several prior felony convictions and appellant had only one felony conviction for robbery and a misdemeanor conviction for carrying a pistol.

Article 36.09, Vernon's Ann.C.C.P., provides:

"Two or more defendants who are jointly or separately indicted or complained against for the same offense or an offense growing out of the same transaction may be, in the discretion of the court, tried jointly or separately as to one or more defendants; provided that in any event either defendant may testify for the other or on behalf of the State; and provided further, that in cases in which, upon timely motion to sever, and evidence introduced thereon, it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant for any reason, the court shall order a severance as to the defendant whose joint trial

would prejudice the other defendant or defendants."

Appellant contends that if another defendant has a prior admissible conviction that a severance should be granted as a matter of right. After appellant's brief was filed in the trial court, this Court held in Robinson v. State, 449 S.W.2d 239, that the mandatory ground for severance applies only where one defendant has no prior admissible conviction and a co-defendant has a prior conviction or convictions which are admissible, and if all the defendants have prior admissible convictions, there must be a showing that a joint trial would be prejudicial to the defendant. Such ground for severance is addressed to the sound discretion of the trial judge.

In Robinson v. State, supra, and Johnson v. State, Tex.Cr.App., 449 S.W.2d 237, no evidence was offered in support of the motion for severance, and this Court held in the absence of such evidence which is required under Article 36.09, supra, no error was presented.

In the present case, no evidence was offered before trial in support of the motion and no error is presented.

Ground of error number one is overruled.

Complaint is made in the second ground of error that the trial court erred in overruling his motion to suppress the evidence seized as a result of the search of the apartment without a warrant.

Officer Don Norman of the Dallas Police Department testified that he received a call at approximately one-thirty Sunday afternoon, January 28, 1968, and went to Oak Cliff where he saw Johnson and Lamb, the complainants, who were visibly shaken. They told him that they had been robbed and gave him a description of the robbers and of the pickup truck and its license number. He saw that the trunk of Johnson's car had been pried upon and damaged. Near the car he found a change box

from a cash register. A CID unit composed of Detective Carl Railey and Officer Van Cleve, who were also present, got the description of the robbers and the pickup truck and left. A short time later they apprehended two men on Oakland Street in a 1953 Chevrolet pickup truck which had the same license number as the one described by Johnson and Lamb. Officer Norman met Railey and Van Cleve again on Oakland Street at approximately two o'clock. Another CID unit was called, and it arrived within twenty-five or thirty minutes. The officers obtained information from James Lee Buster and another man who were apprehended in the pickup truck that the robbers were in an apartment at 3100 Birmingham Street.

The record further reflects that one of the officers knocked at the door of the apartment and Durden (who had been a driver of the pickup truck earlier in the day) told the officers to come in. The officers saw eight men, including Thornton, Lampkin and Thomas, and one woman in the one-bedroom apartment. In the commode that had just been flushed, the officers found the drivers license and social security card of the complainant Johnson. Officer Norman found a .22 caliber revolver and a large amount of change rolled up in a pair of trousers in a closet. Officer Railey found another pistol under the mattress of one of the beds. An automatic pistol and Lamb's watch were in a dresser drawer. All three of the guns were loaded. A toy gun was found under the mattress of another bed. The arrests were made at approximately three-fifteen or three-thirty o'clock in the afternoon.

When questioned on cross-examination why a search warrant was not obtained, Officer Norman testified that they did not have time to obtain one. Officer Babb testified that they could not determine who owned or rented the apartment. Babb was also asked how long it took to get a warrant in an ordinary case. He answered: "Well, there is no ordinary case, because you have to locate a judge."

Article 14.04, V.A.C.C.P., provides:

"Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused."

■ The trial court did not err in admitting the guns and other items found in the apartment. The record reflects that this was on Sunday afternoon, and the officers had been informed that the felony offense of robbery had been committed, and they did not have time to obtain a warrant. The appellants had left the pickup truck that they had been using. The officers were told that the robbers were in an apartment at the Birmingham Street address, but they could not ascertain the name of the landlord or tenant of the apartment.

Their arrest was justified under Article 14.04, supra.

In view of the fact that after the officers entered this one-bedroom apartment they saw nine people with three of them fitting the description given by the complaining witness Johnson as the armed robbers, the search of the apartment for the pistols was justified. See O'Neal v. State, Tex.Cr.App., 416 S.W.2d 433; Trammell v. State, Tex.Cr.App., 445 S.W.2d 190; Price v. State, Tex.Cr.App., 410 S.W.2d 778, and Ware v. State, 151 Tex.Cr.R. 228, 207 S. W.2d 868.

After this case was tried, the Supreme Court of the United States decided Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (June 23, 1969), a burglary case, where officers with an arrest warrant searched the entire three-bedroom house, including the attic, the garage and a small workshop. The officers directed Chimel's wife to "open drawers and physically move contents of the drawers from side to side so that [they] might view any items that would have come from [the] burglary" of a coin store. The officers seized coins, medals, tokens and other objects. The Court held that the entire house could not be searched without a search warrant.

Chimel is distinguishable. There, the officers were searching for stolen coins and property taken in the burglary. In the present case officers under this record were justified after their entry in searching the apartment for the pistols for their own protection.

United States v. Bennett, 415 F.2d 1113 (2d Cir. 1969), in an opinion by Judge Friendly, held that Chimel, supra, was not applicable to searches (other than Chimel itself) prior to June 23, 1969. The Court stated:

"In Stovall v. Denno, 388 U.S. 293, 297, 87 S.Ct. 1967, 1970, 18 L.Ed.2d 1199 (1967), the Court explained that in determining how far a newly announced constitutional rule of criminal procedure would be made prospective only, attention should be given to '(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of retroactive application of the new standards.' All three considerations point to making Chimel prospective in the full sense of Stovall and Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), namely, 'only to the petitioner involved in the case in which the new rule is announced and to all future cases in which the proscribed official conduct has not yet occurred.' Desist v. United States, supra, 394 U.S. at 257, 89 S.Ct. at 1038 (dissenting opinion of Mr. Justice Harlan). See United States v. Hutto, 393 F.2d 783, 784 & n. 3 (4 Cir. 1968). The purpose to be served by Chimel is deterrent; law enforcement officers had justifiably relied upon Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947), and United States v.

Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); and the effect of retroactive application of *Chimel* on the administration of justice would thus be substantial even if this were limited to cases where the judgment had not become final. In contrast there is little to be said in favor of retroactivity under the standards the Court has announced. As pointed out in *Linkletter v. Walker*, 381 U.S. 618, 638, 639, 85 S.Ct. 1731, 1742, 1743, 14 L.Ed.2d 601 (1965), 'there is no likelihood of unreliability or coercion present in a search-and-seizure case'; the exclusionary rule is but a 'procedural weapon that has no bearing on guilt'; and 'the fairness of the trial is not under attack.' See Desist v. United States, *supra*, 394 U.S. at 250–252, 89 S. Ct. 1030."

In Lyon v. United States, 416 F.2d 91 (5th Cir. 1969), the Court also held that Chimel was not retroactive.

■ We agree that Chimel is not retroactive and is not applicable in the present case. The second ground of error is overruled.

■ In the third ground of error, it is contended that the trial court erred in allowing the complainant Johnson to identify appellant at the trial, because he had been in a lineup without counsel.

Reliance is had on United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149, and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178.

The lineup was held at approximately four-thirty p. m. Johnson, on direct examination, identified Thornton, Thomas and Lampkin as the robbers without objection. The State did not offer evidence of the lineup to bolster the in-court identification

testimony. After the defense brought out the fact that a lineup had been held, the State did show that Johnson had identified the three as the robbers in the lineup without hesitation. He had previously described them to the officers. He testified that he could have identified them if no lineup had been held, because he had seen them in the lighted garage at the apartment, and through the broken taillight of his car throughout the day.

Lamb, without objection, identified Lampkin at the trial and at the lineup. He could not identify Thornton or Thomas.

Officers Norman and Babb testified that written waivers of counsel and consent for a lineup were signed by each of the defendants. Neither the State nor the defense pursued this matter further. The waivers of counsel or consent to the lineup do not appear in the record. It was shown that Johnson identified the three at an examining trial and had also identified them from pictures.[1]

There was no showing of any material discrepancy between the descriptions given prior to the arrest and the actual appearance of the accused. A short period of time elapsed between the acts and the lineup identification. The record shows that the in-court identification was of independent origin.

In Martinez v. State, Tex.Cr.App., 437 S.W.2d 842, it was observed that a timely objection to identification testimony must be made at the first opportunity. This was not done, and no reason is shown for delaying his objection. See Lucas v. State, Tex.Cr.App., 444 S.W.2d 638, Evans v. State, Tex.Cr.App., 445 S.W.2d 180, and Evans v. State, Tex.Cr.App., 444 S.W.2d 641.

The third ground of error is overruled.

1. It was not shown when Johnson saw the photographs. The showing of photographs prior to arrest does not in itself make the in-court identification a violation of due process. See Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, and United States v. Collins, 416 F.2d 696 (4th Cir. 1969), and Bowman v. State, Tex.Cr.App., 446 S.W. 2d 320.

■ In the fourth ground of error, appellant contends that reversible error was committed when one of the prosecutors asked the witness Gerald Lamb, "Would you have gotten out of this car for three nigger men at night if they hadn't had guns?" An objection to the question was sustained. The court instructed the jury to disregard the reference of counsel and overruled the motion for mistrial.

In view of the instruction of the court to disregard the remark, we conclude that no reversible error was committed.

The judgment is affirmed.

ONION, Judge (concurring).

The most important question presented by this appeal is the permissible extent or scope of a search incident to a lawful arrest based on probable cause, there being neither an arrest nor search warrant and the lengthening shadows cast upon such permissible scope by the decision in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685.

Overruling Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 and United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, the United States Supreme Court in Chimel held that since the search of Chimel's home went far beyond his person and the area in which he might have obtained either a weapon or something that could have been used as evidence against him, and since there was no constitutional justification, in the absence of a search warrant, for extending the search beyond that area, the scope of the search was unreasonable under the Fourth and Fourteenth Amendments of the United States Constitution.

Chimel declared (395 U.S. at p. 763, 89 S.Ct. at p. 2040, 23 L.Ed.2d at p. 694) that the permissible scope under the Fourth Amendment of a search incident to a valid arrest is "the arrestee's person and the area 'within his immediate control'— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence. There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in absence of well-recognized exceptions, may be made only under the authority of a search warrant. The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less."[1]

In both Harris and Rabinowitz the Supreme Court had upheld searches incident to arrest that extended beyond the scope that is now permissible under Chimel. In Harris the defendant was arrested in the living room of a four room apartment and the entire apartment was searched. In Rabinowitz the arrest occurred in a one room office, and the officers searched "the desk, safe and file cabinets in the office for about an hour and a half." Rabinowitz came to stand for, as the majority in Chimel acknowledges, "the proposition, inter alia, that a warrantless search 'incident to a lawful arrest' may generally extend to the area that is considered to be in the 'possession' or under the 'control' of the person arrested." It was upon this proposition of law that the California courts upheld the search of Chimel's entire house, attic, garage, workshop and various drawers.

That the law in this area has been something less than consistent and unfortunately hazy is acknowledged by Chimel. The pre-Chimel federal cases have been

1. While the Court did not enumerate the "well recognized exceptions" to which it had reference, it would be the right of officers to seize items in plain view if they are where they have a lawful right to be. United States ex rel. Williams v. LaVallee, 415 F.2d 643 (2nd Cir.). In People v. Belvin, 80 Cal.Rptr. 382, it was stated that under Chimel searches of articles customarily carried by an arrested person fall within the area of immediate control.

well reviewed by the Maryland Court of Special Appeals in Scott v. State, 7 Md. App. 505, 256 A.2d 384.

There the Court wrote:

"The police have the right to conduct a contemporaneous search of the arrestee's person for weapons, fruits or instrumentalities of the crime or 'mere' evidence, incident to a lawful arrest. See Terry v. State of Ohio, 392 U.S. 1, 25, 88 S.Ct. 1868, 20 L.Ed.2d 889. Such a search is reasonable in order to remove any weapons that the arrestee might seek to use in order to resist arrest or effect his escape and to secure any evidence in order to prevent its concealment or destruction. While this right to search the person of the arrestee was clearly established, the scope of a warrantless search beyond the person of the arrestee as incident to a lawful arrest was not. To say the least, the cases on the point decided by the Supreme Court do not lend themselves to easy summarization. In Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L. Ed.2d 668, the Court acknowledged that 'the several cases on this subject in this Court cannot be satisfactorily reconciled.' However, it came to be considered that such a search may generally extend, as being reasonable, to the area that is considered in the 'immediate possession' or under the 'immediate control' of the person arrested. The test of reasonableness could not be stated in rigid and absolute terms, Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, and must find resolution in the facts and circumstances of each case, United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653. The rule was simply stated but was difficult in its application to given circumstances for it could not be clearly defined, from an abstract point of view, depending as it did, on the interpretation of such phrases as 'immediate presence', 'immediate control' or 'immediate surroundings' of the arrestee in the light of the facts of a particular case. But it seemed that a search incident to a valid arrest, otherwise reasonable, was not automatically rendered invalid by the fact that a dwelling place rather than business premises was subjected to search and that the right to search was not limited to the room in which the arrest took place. Harris v. United States, supra. In Harris, where a four room apartment was searched, it was observed that the area which reasonably may be subjected to search was not to be determined by the fortuitous circumstances that the arrest took place in the living room as contrasted to some other room of the apartment. It appeared, however, that the bounds of reasonableness were overstepped when the premises searched were separated from the place where the arrest was made, as when the office of the accused was searched following his arrest at his home, Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319, or as when a home, several blocks from the house where the arrests were made, was searched, Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145. The search could not be a 'general' and 'exploratory' one; it appeared that the validity of a search without a search warrant may be affected by the method of search, Anno: 4 L.Ed.2d 1983, 1988. And a search was held unreasonable when a great mass of property was seized (the seizure of the entire contents of a house being barred) Kremen v. United States, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed.2d 876; Anno: 4 L. Ed. 1983, 1990. But a search made without a search warrant, as an incident to a lawful arrest, was not illegal merely because there was time for the arresting officers to have procured a search warrant. United States v. Rabinowitz, supra."

The decisions of this State have not established that the permissible scope of a search incident to a valid arrest is necessarily confined to the room in which the arrest occurs. Relying upon Agnello v.

United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 and Marron v. United States, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231, this Court in Hayes v. State, 115 Tex.Cr.R. 644, 28 S.W.2d 556, held that the place where the arrest is made may also be searched as well as the person of the arrestee. See also Grimm v. State, 116 Tex.Cr.R. 332, 28 S.W.2d 134; January v. State, 117 Tex.Cr.R. 223; 34 S.W.2d 1097; Stokes v. State, 117 Tex.Cr. R. 307, 35 S.W.2d 727.

Citing Abel v. United States, 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668, this Court reached the same result as the earlier cases without defining "place." Lucas v. State, Tex.Cr.App., 368 S.W.2d 605.

In Elg v. State, 129 Tex.Cr.R. 29, 84 S. W.2d 237, the search of the defendant's *residence* when the defendant's wife was arrested at such place was upheld even though there was no search warrant or consent to search.

In King v. Moberley, Tex.Civ.App., 301 S.W.2d 202, involving a tort action against a sheriff, the Eastland Court of Civil Appeals held that scope of a search incident to a lawful arrest "extends not only to the person of the accused, but also to the place *or premises* where the accused is apprehended." (emphasis supplied) The Court relied upon Elg v. State, supra, and Ferguson v. State, 133 Tex.Cr.R. 250, 110 S.W. 2d 61.

Discussing searches incident to arrest, it is written in 51 Tex.Jur.2d, Searches and Seizures, Sec. 9, p. 662:

"The search may be made of the prisoner's person, as well as of the place where the arrest is made, and of personal possessions, premises, or surroundings under his immediate control."

Many authorities are cited.

That such right was not unlimited was recognized in Beeland v. State, 149 Tex. Cr.App. 272, 193 S.W.2d 687, a robbery

case, where the Court pointed out that such a search *may under some circumstances extend* to the place where the arrest occurs. And in Fowler v. State, 114 Tex.Cr.R. 69, 22 S.W.2d 935, the Court refused to sanction the search of a bathroom several yards distant from the point of arrest in a yard adjacent to a residence as incident to an arrest.

The foregoing was the apparent status of federal and Texas law at the time Chimel was decided. If Chimel is to have retroactive application, then a question may be raised as to whether the search in the case at bar exceeded the permissible scope permitted by that decision. It must be then decided whether Chimel is to have prospective or retroactive application.

The Supreme Court expressly reserved the question of the retroactivity of Chimel. Shipley v. California, 395 U.S. 818, 89 S. Ct. 2053, 23 L.Ed.2d 732; Von Cleef v. New Jersey, 395 U.S. 814, 89 S.Ct. 2051, 23 L.Ed.2d 728. The Supreme Court in Shipley and Von Cleef, in holding the searches thère illegal under pre-Chimel rules, seemed to indicate something less than full retroactivity for Chimel.

Among the courts that have considered the question of Chimel's retroactivity, there is a general consensus that Chimel is not to be applied retroactively to searches occurring prior to the date of the Chimel decision (June 23, 1969).

The vast majority of courts have adopted the Stovall form (Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199) of non-retroactivity, i.e., prospective application to searches conducted after June 23, 1969, the date of the Chimel decision. Lyon v. United States, 416 F.2d 91 (5th Cir.—1969); United States v. Bennett, 415 F.2d 1113 (2nd Cir.—1969); People v. Edwards, 80 Cal.Rptr. 633, 458 P.2d 713; People v. Chambers, 80 Cal.Rptr. 672; Scott v. State, 7 Md.App. 505, 256 A.2d 384; People v. Castillo, 80 Cal.Rptr. 211; People v. Garber, 80 Cal.Rptr. 214; People v. Dominquez, 79 Cal.Rptr. 865; People v.

Cressey, 80 Cal.Rptr. 65; People v. Belvin, 80 Cal.Rptr. 382; United States v. Frazier, 304 F.Supp. 467 (D.Md.) 9/30/69.

Some courts have refrained from making a determination of retroactivity. Whiteley v. Meachan, 416 F.2d 36 (10th Cir.). And apparently, without considering the retroactivity of Chimel, the New Mexico Supreme Court in State v. Rhodes, 80 N.M. 729, 460 P.2d 259, held the search there involved illegal under Chimel. The date of the search is not mentioned, but considering the appellate procedure, it would appear to be a pre-Chimel search. In Fresneda v. State, 458 P.2d 134 (Alaska), the Alaska Supreme Court applied Chimel retroactively to cases pending on direct appeal or review as of the date of the Chimel decision using the Linkletter approach (Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601). Even if the Supreme Court eventually adopts the Stovall view as opposed to the Linkletter approach, it is Alaska's or any other state's prerogative to be more restrictive than the Supreme Court.

I agree with those courts which have utilized the Stovall view as to the retroactivity of Chimel. See Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L. Ed.2d 248. For my earlier views as to retroactivity see the original dissenting opinion in Crawford v. State, Tex.Cr.App., 435 S.W.2d 148; Ex part Thomas, Tex.Cr. App., 429 S.W.2d 151. No real purpose can be served by again expressing these views which are in accord with the proposition that Chimel is applied retroactively. See particularly Scott v. State, supra.

I, therefore, agree with the majority that Chimel does not have retroactive application to searches prior to June 23, 1969, and has no application to the search in the instant case which occurred on January 28, 1968. For this reason I disagree with the majority's unnecessary attempt to distinguish Chimel from the case at bar on the facts. Such distinction, if valid, will be applicable to all post-Chimel searches. The distinction urged by the majority, based on what the officers were looking for, has a tendency to be a mere color matching of the facts, overlooking the proposition that in a search incident to a lawful arrest the officers have the right to search within the prescribed area for both weapons for their own protection and for fruits of the crime.[2] See Scott v. State, supra. This fact is implicit in Chimel itself. To say that Chimel can be distinguished because the officers in Chimel were looking for coins taken in a burglary and the officers in the case at bar were looking for pistols will only serve to cloud the proper application of Chimel in the future. In this day and age, the appellate opinion must be written for the law enforcement agencies as well as the bench and bar.

Since Chimel is not to be applied retroactively, I would merely pass on the validity of the search in question based on the pre-Chimel rules in effect at the time of such search. To do so would avoid the necessity of a remand for further development of the facts or a determination of whether there is harmless constitutional error. Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284; Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705.

Turning to the facts of the case, I think it is clear the officers had probable cause to make a lawful arrest. See Article 14.04, V.A.C.C.P. Knowing that the suspects they sought were armed the officers, obviously fearing for their own safety, waited for additional officers before proceeding to the apartment at 3100 Birmingham. Thereafter, four or five uniformed offi-

2. "A search may be made without a warrant in connection with a lawful arrest and incriminating articles connected with the crime, such as its fruits or the means by which it was committed, as well as weapons and other things to effect an escape, found in the possession of the arrested person, may be seized." 51 Tex. Jur.2d, Searches and Seizures, Sec. 9, p. 662.

cers and other officers in plain clothes approached the apartment with one of the officers carrying a shotgun at port arms. The invitation to enter by Durden, under these circumstances, was certainly not a voluntary consent to search. Upon entering the apartment the officers found nine individuals, four of them being the suspects sought. In what room or exactly where these individuals were in the apartment at the time of their arrest or the area in which they could reach does not appear from the record. The size of the one bedroom apartment is not clear from the record. A careful reading thereof reflects references to a bathroom, one bedroom and a bed in the dining room next to the kitchen. Whether there was a living room or other rooms is not revealed by the record, but it does not appear from the evidence that it was a very large one bedroom apartment. The length of the search is not reflected by the record, but we do note that the arrests occurred at approximately 3:00 p. m. or 3:15 p. m. and the appellant was taken downtown at 3:30 p. m. and was before a magistrate at approximately 4:30 p. m. which was prior to the lineup. As to a development of the facts, it must be remembered that when this trial was conducted neither the court nor the attorneys had the benefit of the Chimel decision.

"Under the law before *Chimel* the validity of a search incident to a valid arrest depended on the reasonableness of the search in the totality of the circumstances. See United States v. Rabinowitz and Harris v. United States, 1947, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399." Lyon v. United States, 416 F.2d 91 (5th Cir.).

The case at bar is similar to Harris, which involved the search of a four room apartment. There the Court said, "The area which reasonably may be subjected to search is not to be determined by the fortuitous circumstance that the arrest took place in the living room as contrasted to some other room of the apartment." 331 U.S. at p. 152, 67 S.Ct. at p. 1102.

The search in question does not appear to be more extensive than was reasonable under the circumstances. The items searched for and seized related to the criminal operation for which the arrest had been made. Shipley v. California, 395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed.2d 732 and Von Cleef v. New Jersey, 395 U.S. 814, 89 S.Ct. 2051, 23 L.Ed.2d 1728 can be distinguished. Here the search was contemporaneous with the arrest and was confined to the house where the arrest occurred. Shipley was arrested outside his home and a second search of his house followed. The Court stated the search was not confined to the immediate vicinity of the arrest. In Von Cleef one of the defendants was arrested on the third floor of a 16 room house and for a period of 3 hours officers combed and searched the entire house carting away several thousand papers, publications and other items.

For these reasons, I would hold the search in question reasonable and that the trial court did not err in admitting evidence uncovered in the search. I concur.

