244 So.2d 130 (1971)
Nathaniel GRIMES, Jr., Appellant,
v.
STATE of Florida, Appellee.
No. 39075.
Supreme Court of Florida.
January 28, 1971.
Rehearing Denied March 4, 1971.
*131 Stewart E. Parsons, of Joanos & Parsons, Tallahassee, for appellant.
Robert L. Shevin, Atty. Gen., J. Christian Meffert, Asst. Atty. Gen., for appellee.
ADKINS, Justice.
This is a direct appeal from a judgment adjudging Defendant guilty of murder in the first degree and a sentence of death.
The indictment in this case charged that, from a premeditated design to effect the death of Walter A. Minski, Bill Brown, Jr. and Nathaniel Grimes, Jr. killed him by shooting him with a pistol on January 13, 1969 in Leon County, Florida. A severance was granted and Defendant Grimes was found guilty of murder in the first degree without a recommendation of mercy.
Mr. Minski, the operator of the Prince Murat Hotel in Tallahassee, Leon County, Florida, was mortally wounded shortly before midnight in the office of the motel. Prior to his death Mr. Minski informed a police officer that two young colored men tried to rob him, one of which was tall and slender, over six feet, and the other was about five feet seven inches. The taller one had a pistol and, when Mr. Minski grabbed the man with the gun, the man shot him. At this point both men fled. Mr. Minski also informed a guest at the motel that two young colored men in stocking masks had tried to rob him. An employee of a Gulf service station testified that on the night of the homicide he sold a dollar's worth of high test gasoline to two males in a Dodge Dart, sports model, automobile. This automobile had a "red-lined tire on it" and the wheel cover was off the right rear tire. The driver appeared to be of slight build, but taller than the one in the passenger seat.
An automobile dealer from Cocoa testified that a green Dodge Dart had been reported stolen from Hooper Motors in Cocoa, Florida, on December 7, 1968, and he had recovered the car from the Tallahassee Police Department.
On January 14, 1969, Captain Lane of the Thomasville, Georgia Police Department received a police bulletin advising his office to be on the lookout for a green two-door hardtop 1967 or 1968 Dodge Dart, very dirty, with a red-sidewall tire and possibly a hub cap missing. The bulletin stated that the automobile was believed occupied by two colored males, armed with one or more pistols.
*132 Captain Lane observed an automobile which fitted this description parked in front of the residence of Defendant Grimes in Thomasville, Georgia. He radioed the tag number to the dispatcher and requested a check to ascertain if the automobile was stolen. He was advised that the vehicle had been reported stolen in Titusville, Florida. Captain Lane and a companion, Sergeant Barkley, then placed the automobile under surveillance.
Later they observed the Defendant as he came out of his house wearing a blue bathrobe. Defendant went back into the house for a few minutes, reappeared without the bathrobe, approached the automobile, opened the door and removed a green jacket. At that time the officers approached Defendant in his front yard, identified themselves as police officers and took Defendant into custody. Captain Lane asked Defendant who was in the house and, upon being informed that Defendant's wife and baby were inside, the officer requested and received Defendant's permission to check the residence.
Captain Lane left Defendant in the front yard in the custody of his companion officer and went to the house. The front door was locked, but Mrs. Grimes admitted the officer after being informed that Defendant had given him permission to check the house for other persons. Upon examination Captain Lane found that no other persons were occupying the house. He then asked his companion officer to bring Defendant into the house.
Captain Lane asked Defendant who owned the automobile and Defendant stated that he did. The Defendant was immediately advised of his constitutional rights.
The officers testified that they requested permission to look around the house and this permission was given by Grimes. On appeal the Defendant says that the search without a search warrant of Defendant's residence was not incident to a lawful arrest and was therefore unreasonable and unconstitutional; that the fruits of the search were inadmissible in evidence and the trial court erred in denying his motion to suppress.
The room where the evidence introduced at the trial was found was approximately six or eight feet from the point where Defendant was placed under arrest in the house. The blue bathrobe which Defendant had worn earlier was the first thing Captain Lane noticed. As he picked it up one of the pockets bulged out, and he could see a pistol in the pocket. Captain Lane inquired if Defendant wished to carry some clothes to the police station with him. The Defendant replied affirmatively. As Captain Lane picked up Defendant's jacket he noticed two women's stockings, one of which was torn. Captain Lane removed a man's green windbreaker jacket, a green turtleneck sweater, two stockings, a blue bathrobe, and a .22 revolver.
The Defendant says the search and seizure violated his constitutional rights and seeks comfort in the decision of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), relating to a search incident to an arrest. In Chimel the Court held that the constitution prohibited warrantless search at the time of arrest which extended beyond the accused person and the area he might reach to obtain a weapon or to destroy evidence, i.e., the area under his immediate control. Absent a warrant, the search incident to an arrest may extend no further.
On the other hand the State contends that Chimel is not applicable as it should only apply to searches occurring after June 23, 1969, the date of the Chimel decision. The search in the case sub judice occurred in January, 1969.
The United States Supreme Court expressly declined to determine the question of the retroactivity of Chimel in Shipley v. California, 395 U.S. 818, 89 S.Ct. 2053, 23 L.Ed.2d 732 (1969) and Von Cleef v. New Jersey, 395 U.S. 814, 89 S.Ct. 2051, 23 L.Ed.2d 728 (1969). However, the United States Circuit Court of Appeals, Fifth Circuit, *133 in Lyon v. United States, 416 F.2d 91 (1969), cert. den. 396 U.S. 1023, 90 S.Ct. 597, 24 L.Ed.2d 516 (1970), concluded that Chimel is not retroactive even as to cases still in the process of direct review. See also Jordan v. United States, 416 F.2d 338 (C.C.A. 9th, 1969); United States v. Bennett, 415 F.2d 1113 (C.C.A.2nd, 1969), cert. den. Haywood v. United States, 396 U.S. 852, 90 S.Ct. 113, 117, 24 L.Ed.2d 101 (1969); People v. Castillo, 80 Cal. Rptr. 211 (Cal. App. 1969); Scott v. State, 7 Md. App. 505, 256 A.2d 384 (1969); State v. Tuck, 462 P.2d 175 (Or. App., 1969). Contra, Fresneda v. State, 458 P.2d 134 (Alaska 1969), where that court announced that it would apply Chimel to all cases pending before that court on the date Chimel was decided.
In considering the guidelines for determining the retroactivity of a new constitutional rule, as set forth in Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969), reh. den. 395 U.S. 931, 89 S.Ct. 1766, 23 L.Ed.2d 251 (1969), and Williams v. United States, 418 F.2d 159 (C.C.A.9th, 1969), it appears that Chimel should be prospective in application. As stated by the federal decisions the criteria guiding resolution of this question indicate
(a) The purpose to be served by the new standards,
(b) The extent of reliance by law enforcement authorities on the old standards, and
(c) The effect on the administration of justice of a retroactive application of the new standards.
Even if Chimel were applicable, it should be noted that Defendant could have reached the robe which contained the gun with a couple of good steps, and under the circumstances of the instant case the trial court would be justified in finding that the weapon was within the control of the Defendant as contemplated by Chimel.
However, the Chimel doctrine does not assume any degree of importance when the evidence relating to Defendant's consent to the search is considered. The Defendant was arrested and advised of his constitutional rights in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The officers then asked permission to look around the house and the Defendant gave his consent. This Court has long recognized that when a consent to search is voluntarily given the fruits of that search are admissible in evidence. See Jackson v. State, 132 So.2d 596 (Fla. 1961). There is no evidence that any coercion or pressure was applied to obtain this consent. The mere fact that Defendant was under arrest and in custody at the time consent to the search was given does not render the consent involuntary as a matter of law. Davis v. State, 226 So.2d 257 (Fla.App.2d, 1969).
There was ample evidence to support the trial court's denial of Defendant's motion to suppress based on the fact that Defendant was advised of his constitutional rights and consented to the search. The search was not unreasonable considering all of the circumstances. See Myrick v. State, 177 So.2d 845 (Fla.App.1st, 1965); Garcia v. State, 186 So.2d 556 (Fla.App. 3rd, 1966); James v. State, 223 So.2d 52 (Fla.App.4th, 1969).
Defendant questions the admissibility of an alleged confession in that it was obtained from Defendant after he had been transported from Thomasville, Georgia to Tallahassee, Florida without formal extradition.
Both Florida and Georgia have adopted the Uniform Interstate Extradition Law. See Ch. 941, Fla. Stat. (1967) and Ga. Code Ann. § 44-401  § 44-429 (1935). Under this law a demand should be made by the state which seeks the person's return in order to extradite him from one state to another. Such a person should not be delivered to the agent appointed by the *134 executive authority of the demanding state until he is taken before a Judge of a Court of Record who informs him of the demand made for his surrender, of the crime with which he is charged, and that he has the right to demand and procure legal counsel. These rights may be waived, but the waiver must be in writing, executed before a Judge of any Court of Record of the state. In other words, Defendant contends that his confession should be inadmissible because he was not formally extradited.
It appears from the record that Defendant was advised of his rights in connection with the extradition before being brought back to Tallahassee, Florida. It appears that Defendant voluntarily returned to Florida. Nevertheless, an appropriate waiver should have been signed in the presence of a Judge of a Court of Record. This was improper but, under the circumstances of this case, was not reversible error. No confession or statement made by Defendant while he was in the custody of the Georgia officers in Thomasville, Georgia was admitted into evidence. On these facts the extradition was not a critical stage in the prosecution.
Defendant does not contend that the advice given to him in Tallahassee, Florida concerning his constitutional rights was insufficient, nor does he contend he was subjected to lengthy questioning without comforts, or food, or water, nor does he contend that he was beaten into submission. He contends primarily that any confession or statement secured in Tallahassee, Florida should be excluded from evidence because he was not formally extradited.
The admissibility of confessions and statements obtained from an individual during custodial police interrogation is controlled by the decision in Miranda v. Arizona, supra. Full compliance was had with the dictates of Miranda in the case sub judice. The confession was voluntary and properly received in evidence.
In Frisbie v. Collins, 342 U.S. 519, 72 S.Ct. 509, 96 L.Ed. 541 (1952), the Supreme Court of the United States said:
"This Court has never departed from the rule announced in Ker v. Illinois, 119 U.S. 436, 444, 7 S.Ct. 225, 30 L.Ed. 421, that the power of a court to try a person for crime is not impaired by the fact that he had been brought within the court's jurisdiction by reason of a `forcible abduction'.
"* * * There is nothing in the Constitution that requires a court to permit a guilty person rightfully convicted to escape justice because he was brought to trial against his will." 342 U.S. 522, 72 S.Ct. 511, 96 L.Ed. 545.
See also Hobson v. Crouse, 332 F.2d 561 (C.C.A. 10th, 1964); Hunter v. State, 174 So.2d 415 (Fla.App.3rd, 1965); Jolly v. Wainwright, 175 So.2d 245 (Fla.App.2d, 1965).
The Defendant was given the opportunity to secure advice of counsel and was advised as to his constitutional rights several times before he confessed. The confession was properly admitted into evidence.
Finally, Defendant contends that the trial court erred in allowing a transcription of his tape recorded statement to be published to the jury on the ground that the transcription was not the best evidence. The recording should be considered the best evidence.
Defendant relies upon Duggan v. State, 189 So.2d 890 (Fla.App.1st, 1966). In Duggan, nine copies of a transcription made be a court reporter, who was not present when the alleged conversations were recorded and who had no personal knowledge of the matters dealt with therein, were admitted into evidence and distributed to the jurors. The jurors were allowed to take these copies to the jury room for their use in deliberation. The District Court of Appeal properly reversed the conviction and remanded the case for a new trial.
*135 In the case sub judice, the transcript of the tape recording was not admitted in evidence, but the trial court allowed the transcript to be read after Officer William Campbell testified that he had checked the recording itself and that the transcript was an accurate copy of the recording. Mr. Campbell was present when the recorded statement was taken and, in fact, took the recorded statement. In other words, the transcription was properly authenticated by the person who took the statement and who verified that the transcript was the same evidence as the recording.
The trial court, being satisfied that the contents of the transcript had been properly authenticated by the witness, allowed its publication by Officer Campbell, but did not admit the transcript into evidence. The transcript was not taken into the jury room for the use of the jurors in their deliberations.
The confession was otherwise shown to be voluntary and made only after proper advice to the Defendant as to his constitutional rights. The Defendant has failed to show reversible error on the part of the trial court in allowing Officer Campbell to publish a transcript of a tape recording personally made by him and properly authenticated by him.
We have reviewed the evidence to determine if the interest of justice requires a new trial (Fla. Stat. § 924.32(2), F.S.A.), and find that the evidence is sufficient to support the judgment.
There being no reversible error, the judgment and sentence of the lower court are affirmed.
ROBERTS, C.J., and ERVIN, CARLTON, BOYD and DREW (Retired), JJ., concur.