**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Orlando Bosch AVILA, a/k/a Ernesto,
et al., Defendants-Appellants.**

**No. 27842.**

United States Court of Appeals,
Fifth Circuit.

June 8, 1971.

Melvyn Greenspahn, Ser, Greenspahn, Keyfetz & Gallagher, Daniel Neal Heller, Miami, Fla., for defendants-appellants.

William A. Meadows, Jr., U. S. Atty., Donald I. Bierman, Theodore Klein, Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and COLEMAN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Orlando Bosch Avila, Andres Jorge Gonzalez, Barbaro Balan Garcia, Marco Rodriguez Ramos, Jesus Dominguez Benitez, Jose Diaz Morejon, Jorge Luis Gutierrez Ulla, Paulina Gutierrez, and Aimee Miranda Cruz were charged in a five count indictment. Count I charged Bosch and the other eight defendants violated 18 U.S.C.A. § 371 (1966) by unlawfully and knowingly conspiring with each other to violate 18 U.S.C.A. § 2275 (1970), which precludes knowingly and wilfully causing damage by placing bombs upon or firing at a vessel of foreign registry within the jurisdiction of the United States. Count II charged Bosch, Balan, and Morejon with actually injuring a vessel of foreign registry by firing a recoilless rifle at the SS PO-LANCIA in violation of Section 2275. Counts III, IV, and V charged only Bosch with conveying threats by telegram to damage the ships and planes of Mexico, Spain and England in violation of 18 U.S.C.A. § 837(d) (1966), which precludes conveying threats by telegram to damage real and personal property. Although the defendants entered pleas of not guilty, the jury returned verdicts of guilty as to all defendants on all counts charged. Since we find that no reversible error has been committed in the trial court, we affirm all convictions of all defendants.

The following factual distillate is sufficient to frame the issues presented to this court for review. The instant case grew out of activity in the area of Miami, Florida by certain free Cuban officials who were opposed to the regime of Fidel Castro in that country. A government informer, Morales, testified that in April 1968 he first met and became involved with a group known as Cuban Power and its leader, Bosch, who used the pseudonym, Ernesto. Morales met with and assisted this group over a period of several months, during which time Morales was under supervision and surveillance by the Federal Bureau of Investigation. In the course of his dealings, Morales supplied the Cuban Power

organization, at their request, with dynamite which had secretly been prepared to be inert and had been specially marked so that it might later be identified. The defendants admit receiving some of these deliveries, but they contend that they were to be sent to Cuba. Morales testified that the defendants were, during this time, blowing up ships of foreign registry in the United States.

On another occasion, Morales testified he was called upon to help assemble a 57 millimeter recoilless rifle, which was to be used against the SS POLANCIA. Morales further testified that Balan and Morejon actually fired the rifle as he and Bosch watched.

Subsequent to these incidents, there were several meetings during which the bombings and the firing of the rifle, together with future plans, were discussed. Morales, equipped with electronic eavesdropping equipment, secretly recorded these conversations on four occasions. These recordings, having been translated from Spanish to English, were later introduced in evidence against the defendants at their trial.

In addition to the testimony of Morales and the tape recordings, the Government introduced other highly incriminating evidence. This included a bomb, recovered from the underside of a foreign vessel. This bomb was constructed with the dummy dynamite delivered to the Bosch group. It also contained sponge rubber, the edges of which perfectly matched the edges of a piece of the same material recovered from Bosch's car. Additionally, the newspaper found inside the bomb bore the palm print of two of the defendants.

There was additional testimony identifying Bosch as the sender of a number of telegrams, all signed "Ernesto, General Delegate, Cuban Power." These telegrams were sent to the heads of state of Mexico, Spain, and England and threatened harm to the planes and ships of these countries for engaging in trade with the Castro government of Cuba.

Among the defendant's pretrial motions was a motion for recusal directed at the presiding judge. This motion was made on the grounds that the judge had evinced a personal bias and prejudice toward each of the defendants and their counsel. At oral argument before this court, the parties stipulated that the trial judge entered no written order refusing to recuse himself, but announced from the bench that he had determined he was not disqualified and that it was his duty to continue.

During the trial, the defense made motions to suppress the testimony of the informer, Morales. Additionally, an objection was lodged to the introduction of the tape recordings and translations into evidence. All of the motions and the objections were overrruled.

The defendants set forth three appellate contentions, which assertedly warrant the reversal of the trial court. Reduced to fundamentals, these specifications are that:

1. The District Court erred in denying the defendants' motion for recusal on the grounds of the Court's bias and prejudice against the defendants.

2. The District Court erred in admitting the tape recordings into evidence because they were obtained in violation of the defendants' Fourth and Fifth Amendment rights.

3. The federal agents exceeded the authority of their search warrants.

## I. THE RECUSAL ISSUE

A close examination of the record reveals that the defendants' attack, which alleges bias and prejudice on the part of the trial judge, is simply not supported by any specific manifestations of such bias or prejudice. In fact, the defendants themselves cite only an order denying an appeal bond, entered long after the jury entered its verdict. The defendants also assert that the trial judge rushed the case to a trial five

weeks after the defendants' arrest. From this interval alone they may desire this court to infer some prejudice or bias against their causes; however, neither this period per se nor the record as a whole will support such an inference. The defendants themselves requested a speedy trial and did not request a continuance. In the face of their own action, they will not now be heard to complain of insufficient time in which to prepare their case.

The defendants have wholly failed to carry the burden of demonstrating how any improper attitude of the trial judge manifested itself in judicial action which harmed their defense or prejudiced their rights.

## II. THE ELECTRONIC SURVEILLANCE ISSUE

■ The defendants candidly admit in a supplemental brief that a decision rendered subsequent to oral argument is adverse to the argument originally advanced that the tape recordings and transcriptions should not have been admitted into evidence because they were obtained in violation of the defendants' Fourth and Fifth Amendment rights. The defendants originally argued that an informer's consent to clandestine electronic surveillance cannot waive the accused's Fourth Amendment rights. The United States Supreme Court has now expressly rejected this argument in United States v. White, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971). Here the Supreme Court declared:

> Concededly a police agent who conceals his police connections may write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights. Hoffa v. United States, 385 U.S. 293, 300–303, 87 S.Ct. 408, 412–414, 17 L. Ed.2d 374. For constitutional purposes, no different result is required if the agent instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person, Lopez v. United States, [373 U.S. 427, 83 S.Ct. 1381, 10 L. Ed.2d 462], *supra*; (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency. On Lee v. United States, [343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270], *supra*. If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks.

■ Even faced with the *White* decision, the defendants still seek to exclude the tapes and transcripts. They now assert that they were denied due process. The factors which allegedly deprived them of process otherwise due and forestalled a fair trial, center on the lateness —the night before trial—of receiving the tapes and translated transcripts. This tardiness on the part of the government coupled with the vast bulk of the material is alleged to have prevented adequate trial preparation. As we have previously noted, the defendants made no motion for a continuance. We therefore reject this basis for excluding the tapes.

■ Additionally it is argued that the tapes should have been excluded because they were in a foreign language and were inaudible in many places. We also reject this argument. This Circuit has held that tape recordings which are partially inaudible are not inadmissible per se unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy. This determination is left to the sound discretion of the trial judge. Addison v.

United States, 317 F.2d 808, 815 (5th Cir. 1963). In the instant case there was ample basis for the trial court's determination that the tapes and the translated transcripts were an accurate reproduction of the conversation they purported to reproduce. This basis is of course bolstered by the fact that the person who carried the recording device appeared as a witness in the trial and was subject to cross-examination.

### III. THE SEARCH WARRANT IS-SUE

Finally, the defendants contend that the government agents exceeded the authority of their search warrants. It is their contention that the two warrants in question authorized the seizure of 2 and 5 items and that, respectively, 26 and 39 items were seized under such warrants. Since these items were not in Bosch's reach at the time of his arrest, to seize them without a warrant is claimed to be a violation of the strictures of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

The defendants reliance on *Chimel* is misplaced. The Supreme Court has recently held that *Chimel* is not to be applied retroactively and should not be applied to searches conducted prior to the date of that decision —June 23, 1969. Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). The search in the instant case occurred prior to the decision in *Chimel*. Under the law existing contemporaneous to the search, the seizure of the various items would have been justified as occurring in the course of an arrest. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947)

### IV. CONCLUSION

We have carefully considered each point raised by the defendants and have tested it against the record and the law applicable to the matter in controversy. We are satisfied that there was no bias on the part of the trial judge, that the tapes and transcripts were properly admitted, and that the agents did not engage in an illegal search and seizure. The judgment of the trial court is therefore

Affirmed.